**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ali Abdulatif KARAOUNI, aka**
**Ali Abdelatif Karaouni,**
**Defendant–Appellant.**

No. 03–10327.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2004.

Filed Aug. 24, 2004.

**1140**

---

Patience Milrod, Fresno, CA, for the defendant-appellant.

David L. Gappa, Fresno, CA; McGregor W. Scott and Samantha S. Spangler, Sacramento, CA, for the plaintiff-appellee.

Before: FERGUSON, REINHARDT, and PAEZ, Circuit Judges.

REINHARDT, Circuit Judge:

After a two-day trial, Ali Abdulatif Karaouni was convicted of violating 18 U.S.C. § 911 by falsely claiming to be a United States citizen when he checked a box on an Immigration and Naturalization Service (INS) I–9 Employment Eligibility Verification Form next to the following printed statement: "I attest, under penalty of perjury, that I am ... [a] citizen or national of the United States."[1]

On appeal, Karaouni contends that the evidence was insufficient to support his

conviction because no rational juror could find beyond a reasonable doubt that, by checking the box on the I–9 Form, he made a claim to be a U.S. citizen as opposed to a U.S. national. Because a claim to be a U.S. national, even if false, does not constitute a violation of 18 U.S.C. § 911, we reverse the district court's judgment and vacate Karaouni's conviction and sentence.

## I.

At the two-day trial, documents were admitted into evidence from Karaouni's INS file which establish the following facts. In January 1992, Karaouni entered the United States carrying a Lebanese passport and was authorized to stay through July 1992.[2] In August 1992, Karaouni submitted an application to the INS requesting permission to remain in the United States to accept employment. On this application, Karaouni stated that Lebanon was his place of birth and his country of citizenship. In January 1993, the INS granted Karaouni permission to remain until January 1994. Four months later, Karaouni was hired by a Kentucky Fried Chicken restaurant in Fresno, California. At that time, he completed an I–9 Employment Eligibility Verification Form on which he checked the box attesting that he was "an alien authorized to work until 1/01/94."

In December 1993, the INS denied an asylum application that Karaouni had filed the previous year.[3] An Immigration Judge ordered him deported in February 1995, but he remained in the country and

---

[1] The INS is now called the Bureau of Citizenship and Immigration Services. For the sake of consistency, we will refer to it as the INS throughout this opinion.

[2] Much of the evidence came in over objections from defense counsel. On appeal, how-

ever, Karaouni does not challenge the admissibility of the disputed evidence.

[3] Pursuant to a pre-trial order, portions of Karaouni's asylum application were redacted, and it was referred to as an "application for an immigration benefit" in front of the jury.

subsequently married Elizabeth Rodriguez, a U.S. citizen, in October 1997.

Although Karaouni did not testify during the trial, Rodriguez was called as a witness for the defense. Rodriguez testified that, soon after she married Karaouni, they hired George Shalub, an immigration lawyer, because "we knew Ali had problems with his immigration ... so we wanted to fix this." Shalub prepared an INS I–130 sponsorship petition for Rodriguez to file on Karaouni's behalf as the first step in the process to become a permanent resident on the basis of his marriage to a U.S. citizen.[4] Although Shalub did not provide the couple with a detailed explanation of the legal process, according to Rodriguez, "he made it seem like there was no way that this form could be disapproved because I'm a U.S. citizen and through me, he could stay here."[5]

In October 1998, Karaouni took the next step in the process to change his status. He signed an I–485 application to register as a permanent resident and a supporting biographic information form. In these documents, Karaouni stated that he was currently "out of status" and that his nationality was Lebanese. The INS denied Karaouni's application to register as a permanent resident in December 2001 because he failed to appear for a hearing.

In June 1998—after Rodriguez filed the I–130 sponsorship petition but before Karaouni submitted the I–485 change-ofstatus application—Karaouni applied to work as a patient transporter, catering assistant, or dietary aid at St. Agnes Medical Center in Fresno, California. On his employment application, he checked a box indicating that he could "provide proof of U.S. citizenship and/or the legal right to work in the United States." He was hired a month later. When Karaouni completed the required I–9 Employment Eligibility Verification Form on July 7, 1998, he checked the box next to the statement: "I attest, under penalty of prejury, that I am ... [a] citizen or national of the United States."

On September 4, 2002, INS Agent Hector Bencomo arrested Karaouni, seized various documents, and conducted an interrogation. Thereafter, Karaouni was arraigned on a two-count indictment. Both counts pertained specifically to the statement to which Karaouni attested on the July 1998 I–9 Form. The second count, which charged Karaouni with making false statements on an immigration form in violation of 18 U.S.C. § 1001(a)(2), was dismissed by the district court pursuant to a motion by the government. The only remaining charge at trial was contained in the first count: falsely claiming to be a U.S. citizen in violation of § 911.

The jury found Karaouni guilty of violating § 911 and, in June 2003, he was sentenced to three months in custody and twelve months of supervised release. By the time of Karaouni's sentencing, however, he had already served more than three months because he had been incarcerated since his September 2002 arrest. Accordingly, he was released and deported to Lebanon, where he is currently residing.

## II.

When, as in this case, a defendant preserves a challenge to the sufficiency of the evidence to support a conviction by making a proper motion for acquittal under Federal Rule of Civil Procedure 29, we review the claim *de novo*. *United*

---

**4.** The I–130 petition was not entered into evidence. Although there was no testimony as to its precise date, the government stated on the record out of the presence of the jury that it was filed in March 1998.

**5.** After four and one-half years of marriage, Rodriguez and Karaouni divorced. Thus, she was his ex-wife when she testified.

*States v. Carranza,* 289 F.3d, 634, 641 (9th Cir.2002). We must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Booth,* 309 F.3d 566, 574 n. 5 (9th Cir.2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)).

Before examining the challenge to the sufficiency of the evidence to support a conviction under § 911, we note that this statute was not the only legal tool that the government could have used to hold Karaouni accountable for his statement on the I–9 Form. In fact, the second count of the indictment charged Karaouni with violating 18 U.S.C. § 1001(a)(2), which is a far broader statute than § 911. It criminalizes any false statement in a proceeding before a government agency, not just a false claim of U.S. citizenship.[6] The government's decision to dismiss the § 1001(a)(2) charge prior to trial may have been a tactical error; nevertheless, our review is limited to the sole count upon which the government chose to proceed.

■ There are three essential elements of a § 911 violation. The government had the burden of proving beyond a reasonable doubt that: (1) Karaouni made a false claim of U.S. citizenship; (2) his misrepresentation was willful (i.e. voluntary and deliberate); and (3) it was conveyed to someone with good reason to inquire into his citizenship status. *United States v. Romero–Avila,* 210 F.3d 1017, 1020–21 (9th Cir.2000); *Chow Bing Kew v. United States,* 248 F.2d 466, 469 (9th Cir.1957).[7] It is the first element that is at issue on appeal.

■ It is undisputed that Karaouni was not a U.S. citizen in July 1998, when he verified his eligibility to work at St. Agnes Medical Center by checking a box on the I–9 Form next to the printed statement: "I attest, under penalty of perjury, that I am ... [a] citizen or national of the United States." However, Karaouni contends that no rational trier of fact could find beyond a reasonable doubt that his verification of the printed statement on the I–9 Form constituted a violation of § 911 because the printed statement was phrased in the disjunctive. *See Prince v. Jacoby,* 303 F.3d 1074, 1080–81 (9th Cir.2002) (explaining that the use of the disjunctive "or" suggests that terms in a sequence should not be interpreted as synonyms). According to Karaouni, by checking the box next to the printed statement, which the government presumably drafted with care, he merely claimed that he was a citizen *or* a national, not that he was a citizen and not that he was a citizen *and* a national.

This syntactic distinction is critical because the legal definitions of U.S. national and U.S. citizen are not synonymous. All citizens of the United States are nationals, but some nationals, such as persons born in American Samoa and other U.S. territo-

---

**6.** Under § 1001(a)(2), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be fined under this title or imprisoned not more than 5 years, or both."

**7.** The first two elements are explicitly set forth in the statute: "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 911. The third element is a limiting construction that we have adopted in response to First Amendment overbreadth challenges. *See United States v. Esparza–Ponce,* 193 F.3d 1133, 1137–38 (9th Cir.1999); *Smiley v. United States,* 181 F.2d 505, 507–08 (9th Cir.1950).

rial possessions, are not citizens. 8 U.S.C. § 1408; *Perdomo–Padilla v. Ashcroft,* 333 F.3d 964, 967–69 (9th Cir.2003). Indeed, the term "national of the United States" is defined as including "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Thus, a claim to be a U.S. national is not a claim to be a citizen, but a claim to be a member of a broader group that includes citizens as well as others.[8]

A plain reading of the statute shows beyond any question that the provision covers only false claims of U.S. citizenship and not false claims of U.S. nationality. "It has long been settled that penal statutes are to be construed strictly, and that one is not to be subjected to a penalty unless the words of the statute plainly impose it." *United States v. Campos–Serrano,* 404 U.S. 293, 297, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971) (internal quotation marks and citations omitted); *see also United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (summarizing the canon of strict construction for criminal statutes). Whereas the plain language of § 911 refers only to citizenship, the U.S.Code contains other statutory provisions that state explicitly that they apply to both U.S. citizens and nationals or simply use the definition of national set forth in 8 U.S.C. § 1101(a)(22) ("The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."). *See e.g.,* 18

U.S.C. § 1015(e) (establishing that it is a crime for an alien to knowingly make "any false statement or claim that he is, or at any time has been, a citizen or national of the United States, with the intent to obtain on behalf of himself, or any other person, any Federal or State benefit or service, or to engage unlawfully in employment in the United States"); 18 U.S.C. § 1119 (making it a crime for a "national of the United States" to kill or attempt to kill "a national of the United States while such national is outside the United States but within the jurisdiction of another country," and explicitly stating that, for the purposes of this section, national has the meaning set forth in 8 U.S.C. § 1101(a)(22)).

In sum, we hold that the district court violated a basic principle of criminal law by allowing the government to prove that an individual committed the charged offense by showing that he committed either that offense or some other act. Because Karaouni merely attested on the I–9 Form that he was a U.S. citizen *or* national, and a claim of U.S. nationality, even if false, does not violate § 911, we hold that his answer on the I–9 Form cannot constitute an offense under that statute. Thus, there is insufficient evidence to support the conviction.

### III.

We next consider whether it was proper for the district court to allow the jury to draw the inference from the record as a whole that, by checking the box on the I–9 Form, Karaouni was asserting that he was

---

**8.** As a legal concept, the term U.S. national came into use in the after-math of the Spanish–American War to clarify the status of persons born in the territories that the United States acquired from Spain. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 91, 107–13, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Rabang v. INS,* 35 F.3d 1449, 1452 (9th Cir.1994); *Cabebe v. Acheson,* 183 F.2d 795, 797–801 (9th

Cir.1950). We recently have given the term a narrow construction, holding that an alien does not become a national simply by signing a statement of allegiance in a naturalization application, *Perdomo–Padilla,* 333 F.3d at 972, or by serving in the U.S. armed forces after taking the standard military oath of allegiance. *Reyes–Alcaraz v. Ashcroft,* 363 F.3d 937, 939–41 (9th Cir.2004).

a U.S. citizen. According to the government, it would have been implausible for Karaouni, whether falsely or by mistake, to have claimed to be a U.S. national because he was not born in the U.S. territorial possessions and, thus, did not meet the legal definition of U.S. national. *See Perdomo–Padilla,* 333 F.3d at 972. The plausibility of Karaouni's statement is not the issue here, however. The legal question is simply whether Karaouni made a statement that violated § 911. Only an assertion that he was a citizen of the United States would have done so. An assertion that he was either a citizen of the United States or of Mars would not. For in that case, as here, Karaouni would simply have asserted that he was a citizen of A or B, not that he was a citizen of A.[9]

▉ Furthermore, we, along with other circuits, have held that a statement from which U.S. citizenship could be inferred is insufficient evidence to support a conviction under § 911. Only a direct representation of U.S. citizenship suffices. *Smiley,* 181 F.2d at 506–07; *see also United States v. Anzalone,* 197 F.2d 714, 717–18 (3d Cir. 1952); *United States v. Franklin,* 188 F.2d 182, 187–88 (7th Cir.1951); *United States v. Weber,* 185 F.2d 479, 479 (7th Cir.1950). In *Smiley,* for instance, we reversed two of three convictions on the ground that there was insufficient evidence that the appellant had directly represented himself to be a U.S. citizen.[10] The first reversal involved a statement by the defendant to the Beverly Hills police that he was born in New York and had lived in the United States for his entire life. The second involved inserting the word "yes" in the space next to "citizen" and "N.Y." in the space next to "nativity" on a prison identification form. In contrast, we affirmed the third conviction because we concluded that Smiley's "yes" answer to a deputy sheriff's direct question whether he was a U.S. citizen provided sufficient evidence of a direct misrepresentation. 181 F.2d at 506–07; *see also United States v. Garcia,* 739 F.2d 440, 443 (9th Cir.1984) (explaining that the district court erred by failing to give a special jury instruction that the accused could not be found guilty of falsely representing himself as a U.S. citizen if he merely said, during an interrogation conducted by a border control agent, that he was born in McAllen, Texas).

Because Karaouni was charged with making a false claim of U.S. citizenship on the I–9 Form and because he did not make a claim of U.S. citizenship on that form, we

**9.** We need not decide whether the evidence was sufficient to convict Karaouni for willfully making a false claim of U.S. nationality. We note, however, that it might not have been implausible for Karaouni to have mistakenly believed that his immigration status changed after he married a U.S. citizen and his wife filed an I–130 sponsorship petition. The government effectively argues that Karaouni should have had a more sophisticated understanding of immigration law than did the Ninth Circuit at the time he filed the I–9 Form. Prior to 2003, it was an open question in this circuit and elsewhere whether an alien could become a U.S. national by, for instance, signing a statement of allegiance on an application for naturalization. *Perdomo–Padilla,* 333 F.3d at 972; *see also Salim v. Ashcroft,* 350 F.3d 307, 309–10 (3d Cir.2003); *In re*

*NAVAS–ACOSTA,* 23 I. & N. Dec. 586, 2003 WL 1986475 (2003); *but see United States v. Morin,* 80 F.3d 124, 126 (4th Cir.1996) (holding that an application for citizenship *is* sufficient to establish one's status as a U.S. national). Not surprisingly, the legal distinction between a U.S. citizen and national confused the jury, as evidenced by the question that it submitted during its deliberations: "What is the definition of a national of the United States?" After rejecting the possibility of supplemental instructions, the court advised the jury that the definition had not been put into evidence by the parties.

**10.** *Smiley* dealt with 8 U.S.C. § 746(a)(18) (1940), the similarly-worded predecessor statute to § 911. *See Esparza–Ponce,* 193 F.3d at 1137–38.

hold that the district court erred by permitting the jury to convict him of violating § 911 on the basis of inferences drawn from other evidence that the government introduced.[11]

## IV.

The only remaining issue is the relevance of Karaouni's purported admission to INS Agent Bencomo that, by checking the box on the July 1998 I–9 Form, he intended to represent himself as a U.S. citizen. According to the "Record of Sworn Statement" memorializing the interrogation, Karaouni answered, "yes, mistake" to Agent Bencomo's question: "Did you state on the INS job form (I–9) that you were a citizen of the United States and did you sign the form known as the INS form I–9?"

Karaouni's response to Agent Bencomo's compound question is somewhat cryptic. Even were we to construe it as an admission that he intended to state that he was a U.S. citizen, however, the printed statement on the I–9 Form, when checked, did not, in fact, constitute a representation of citizenship. Karaouni merely represented that he was either a U.S. citizen *or* national, which, for the reasons that we set forth above, is not a crime under § 911.

■ A defendant may not be convicted on the basis of an admission that he committed a crime, when the actions that he believed to be unlawful did not, in fact, violate any statute. Torcia, 1 Wharton's Criminal Law § 79 (15th ed., 1993) ("It is fundamental that conduct which is not penally prohibited does not become criminal simply because the actor believed his conduct constituted a crime.").[12] Had Karaouni been charged with attempting or conspiring to make a false claim of U.S. citizenship, it is possible that he could have been convicted on the basis of evidence that he intended to misrepresent himself as a citizen when he filled out the I–9 Form—so long as neither factual nor legal impossibility was a valid defense to such crimes. *See, e.g., United States v. Steward*, 16 F.3d 317, 320 (9th Cir.1994) (holding that an individual may be convicted of attempt to distribute a controlled substance when, unbeknownst to him, the actual substance that he offered to sell was not a controlled substance); *see also*, Robbins, *Attempting the Impossible: The Emerging Consensus*, 23 Harv. J. on Legis. 377 (1986). However, where the completion of a particular act is an element of the charged crime, as it is here, an individual who has not engaged in the proscribed conduct cannot be convicted for violating the statute. *See, e.g., People v. Rojas*, 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921, 924–25 (1961); *Com. v. Henley*, 504 Pa.

**11.** Of course the entire record *is* relevant to establish the second element of a § 911 violation: that the misrepresentation of U.S. citizenship was willful. In cases where we have addressed challenges to the sufficiency of the evidence to support the wilfulness element, however, the parties did not dispute that the defendant had made a direct misrepresentation. *See Chow Bing Kew*, 248 F.2d at 470; *De Pratu v. United States*, 171 F.2d 75, 76 (9th Cir.1948).

**12.** We have developed rules of criminal procedure that avert the injustice of obtaining a conviction on the basis of statements "extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past." *Smith v. United States*, 348 U.S. 147, 153, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *see also Opper v. United States*, 348 U.S. 84, 89–91, 75 S.Ct. 158, 99 L.Ed. 101 (1954) (holding that a defendant cannot be convicted on the basis of an extrajudicial confession alone; such a confession must be corroborated by other evidence that the crime actually occurred); *U.S. v. Lopez–Alvarez*, 970 F.2d 583, 589–93 (9th Cir.1992) (same); *Rodriquez v. United States*, 407 F.2d 832, 833–34 (9th Cir.1969) (same).

408, 474 A.2d 1115, 1116–19 (1984); *see also United States v. Egger*, 470 F.2d 1179, 1181 (9th Cir.1972) ("When the actual, physical possession of stolen property has been recovered by the owner or his agent, its character as stolen property is lost, and the subsequent delivery of the property by the owner or agent to a particeps criminis, for the purpose of entrapping him as the receiver of stolen goods, does not establish the crime, for in a legal sense he does not receive stolen property.") (quoting *United States v. Cohen*, 274 F. 596, 599 (3d Cir. 1921)). Because Karaouni did not make a false claim of citizenship, the only criminal act that he was placed on trial for having committed, his intention to do so, or his erroneous belief that he had done so, is irrelevant.[13]

### V.

For the foregoing reasons, we **REVERSE** the judgment and **VACATE** the sentence and the conviction.

---

**13.** Thus, we need not decide whether Karaouni's cryptic response to Bencomo's question constituted an admission. We note, however, that the government is not generally permitted to obtain convictions or waivers of rights on the basis of imprecise, compound questions such as the one that Agent Bencomo asked. *See, e.g., Bronston v. United States,* 409 U.S. 352, 360, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) ("The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry."); *United States v. Leon–Leon,* 35 F.3d 1428, 1431 (9th Cir.1994) (holding that the immigration judge abused his discretion in asking "in a single, compound, untranslated question whether [the appellant] waived his rights and whether he admitted he was deportable"); *United States v. Sainz,* 772 F.2d 559, 564 (9th Cir.1985) ("A witness cannot be forced to guess at the meaning of the question to which he must respond upon peril of perjury.").