**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NASIR RANA,

   Petitioner,

 v.

ALBERTO R. GONZALES, Attorney
General,

   Respondent.

No. 05-9508
(No. A73 691 054)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **McKAY**, and **MURPHY**, Circuit Judges.

  After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

  Petitioner Nasir Rana, a native and citizen of Pakistan, was ordered deported after his application for adjustment of status was denied. The

---

[*]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Immigration Judge (IJ) initially granted Mr. Rana adjustment of status to that of a lawfully admitted permanent resident before reopening the case and considering evidence that Mr. Rana misrepresented on various I-9 employment forms that he was a citizen of the United States. The IJ held that these misrepresentations made Mr. Rana ineligible for adjustment of status, and the Board of Immigration Appeals (BIA) affirmed.

Mr. Rana presents six points on appeal to this court. First, he argues that the IJ erred by granting the government's motion to reopen because the government's motion to reopen did not meet the applicable regulatory requirements. Second, he argues that, even if the IJ reopened the case *sua sponte*, he abused his discretion in doing so. Third, he argues that the regulations provide procedures for rescinding a previously granted adjustment of status and that the IJ's failure to require the government to follow these procedures violated his due process rights. Fourth, he argues that the BIA abused its discretion by not providing a meaningful review of the IJ's decision to reopen the case. Fifth, he argues that the IJ's decision to reopen the case violated the principal of res judicata. Sixth, he argues that he did not make a false claim of United States citizenship.

Exercising our jurisdiction under 8 U.S.C. § 1252, we affirm.[1]

---

[1] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) took effect on April 1, 1997, and, among other things, repealed 8 U.S.C.

(continued...)

# I. BACKGROUND

Mr. Rana was issued an Order to Show Cause dated April 17, 1996, after failing to leave the country upon expiration of his student visa. After a hearing, the IJ denied Mr. Rana's application for suspension of deportation and his application for voluntary departure and issued an order for deportation to Pakistan.[2] Mr. Rana filed a motion to reopen with the BIA seeking adjustment of status on the basis that, among other things, his wife had been granted lawful permanent resident status and that they had had a second United States citizen child. The BIA granted the motion and remanded the proceedings to the IJ for consideration of the adjustment application.

At the hearing on remand Mr. Rana testified that he had misrepresented himself to be a legal resident a number of times in order to gain employment. A

---

[1](...continued)
§ 1105a and enacted 8 U.S.C. § 1252 governing judicial review of removal orders. *See Tapia Garcia v. INS*, 237 F.3d 1216, 1218 (10th Cir. 2001). However, § 1105a remained substantially in effect in cases where, as here, the original order to show cause was issued prior to IIRIRA's effective date and the agency's final order of deportation was issued after October 31, 1996. *See Desta v. Ashcroft*, 329 F.3d 1179, 1180 n.1 (10th Cir. 2003). On May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, took effect. Under the § 106(d) of Division B of the REAL ID Act, jurisdiction over petitions for review filed under former § 1105a is now governed by 8 U.S.C. § 1252. *See* Pub. L. No. 109-13, 119 Stat. 311.

[2] Voluntary departure was refused because Mr. Rana had been convicted of unauthorized acquisition and possession of food stamps in 1995.

review of the transcript reveals the following exchange between Mr. Rana and

government counsel:

> Q. (Counsel)    And when you got the job you had to fill out a form called an I-9, didn't you?
>
> A. (Mr. Rana)   Yes, ma'am.
>
> Q.              And what information did you provide that you were authorized to work in the United States?
>
> A.              A social security card and drivers license.
>
> Q.              And how did you represent yourself, as a legal permanent resident, United States citizen, or what?
>
> A.              Yes, ma'am.
>
> Q.              Which one?
>
> A.              Legal permanent resident.

Admin. R. at 236.[3]

The IJ granted Mr. Rana's application for adjustment of status and a waiver

to cure his conviction of food stamp fraud on the basis of the extreme hardship

Mr. Rana's departure would cause his family.  The IJ also determined that

_____

[3]    The immigration status in question is generally referred to in the statute governing adjustment of status as "lawfully admitted for permanent residence." 8 U.S.C. § 1255.  The term used on the I-9 form is "lawful permanent resident." Admin. R. at 311-314.  The parties also refer to this immigration status at times as "legal permanent resident" or simply "permanent resident."  For the purposes of this opinion we discern no substantive difference in these terms.

Mr. Rana would potentially qualify for a waiver to cure his misrepresentations of lawful permanent residency.[4]

Prior to issuing his decision, the IJ noted that he had been "preliminarily" advised that background checks had been completed and stated that, if this turned out to be incorrect and if government counsel found "any additional derogatory information," he would reopen the case on his own motion. Admin. R. at 273. The judge also advised the parties that he would reopen if Mr. Rana did not pay a certain application fee within 30 days, *id.*, or if the court decided to require a medical report and it was not forthcoming, *id.* at 274. Government counsel waived appeal of the IJ's decision, and the IJ stated to Mr. Rana at the conclusion of the hearing:

> Mr. Rana, I've granted your application for adjustment of status. Government counsel today has accepted that as a final decision and you are therefore a permanent resident of the United States. I'd caution you, sir, that you had a criminal offense in the past, for which you've expressed remorse and regret. I think you can rest assured that you've also apparently misrepresented your immigration status to your employer, even though I can personally understand why you would do that; nevertheless, that doesn't excuse the potential consequences and the fact that you've done it. At least at this point in time, you won't have to misrepresent yourself as being a permanent resident in the future. However, I would just caution you, that if you come before an Immigration Court because of any additional violations or future violations, I think you can expect that you would not be a candidate for favorable discretion in the future.

---

[4]    The IJ "contemplated that [Mr. Rana] would formally submit the necessary [waiver] application form subsequent to the conclusion of the hearing." Admin. R. at 70.

*Id.* at 274-75.

Two days after the hearing, the government moved to reopen, alleging that it had obtained copies of Mr. Rana's I-9 forms from his current and former employers showing he had checked the box for a citizen or national, not the box for a lawful permanent resident. Mr. Rana objected to the motion on the ground that the government could have presented the I-9s at the previous hearing. The IJ ordered the case reopened:

> ORDER: Government motion to reopen removal proceedings is hereby granted. The evidence that the government is seeking to have considered . . . is material and was not available at the time the matter was considered in hearing . . . . Though it may be true, as argued by [Mr. Rana's] counsel that the information . . . had been available for a significant period of time prior to the . . . hearing, nevertheless it was not until after [Mr. Rana's] testimony was received . . . that government counsel determined the need for additional inquiry.
>
> In any event given the nature of the claim that respondent provided potentially false testimony to this Court in order to obtain an immigration benefit from this Court, the matter would otherwise be reopened upon the Court's own motion and authority.

*Id.* at 300.

At the hearing following reopening, Mr. Rana claimed that when he had previously testified that he had represented to his employers that he was a lawful permanent resident, he really meant that he had represented that he was in the United States legally. He testified that he had been advised by his first employer that if he had a social security card and a driver's license he should check the box

-6-

on the I-9 for citizen or national, and that he simply checked the same box on subsequent I-9s. He testified that he was pretty familiar with what a citizen was, *id.* at 289, and that he provided false testimony or a false statement on his I-9's that he was a United States citizen, *id.* at 295. Finally, the judge asked Mr. Rana why he didn't simply "check the box that said [he was] authorized to work in the United States." *Id.* at 296. Mr. Rana answered: "Then you have to provide the work authorization or green card." *Id.*

In his oral decision the IJ found that the "I-9's were not actually available to Government counsel at the time of the hearing, though admittedly had a more extensive investigation [been] conducted prior to the hearing, the information could have potentially been received." *Id.* at 71. The court also noted that "[Mr. Rana] ha[s] provided false information to the Court, under oath, in conjunction with this application for adjustment of status." *Id.* at 72. The court stated:

> The Court would additionally note that fraud permeates [Mr. Rana's] presence in the United States, going back to his 1995 conviction for unauthorized acquisition and possession of food stamps. The Court is neither convinced nor persuaded by [Mr. Rana's] claim that he did not intend to mislead the Court when he testified on June the 2nd, that he only claimed to be a legal resident at time of preparations [sic] of the I-9's.

*Id.* at 73. The court denied Mr. Rana's adjustment application on the ground that his false representations of citizenship constituted an unwaivable ground of

inadmissibility and ordered Mr. Rana deported; a decision the BIA adopted and affirmed on appeal.

## II.  STANDARD OF REVIEW

Here, the BIA "adopted and affirmed" the IJ's decision in a brief opinion. Admin. R. at 16.  Consequently, we review the BIA's decision with consultation of the IJ's more complete explanation of the adopted grounds for the decision. *See Uanreroro v. Gonzales*, No. 04-9537, 2006 WL 895240, at *5 (10th Cir. Apr. 6, 2006).  We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard.  *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).  Under a substantial-evidence standard "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole."  *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).  "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (quotation omitted).

## III.  ANALYSIS

Mr. Rana's first, second, third, and fifth points on appeal attack the IJ's decision to reopen his case; his fourth point attacks the BIA's review of the IJ's decision to reopen; and his sixth point attacks the IJ's decision on the merits after reopening.  We review each of these issues in turn.

A. IJ's Decision to Reopen.

　　1. Abuse of Discretion.

　Mr. Rana first argues that the IJ improperly granted the government's motion to reopen the case because the motion was not based on newly discovered evidence. We need not consider this argument, however. Under 8 C.F.R. § 1003.23(b)(1), "[a]n [IJ] may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the [BIA]." In his order reopening the case, the IJ, after discussing Mr. Rana's argument opposing the government's motion, stated, "In any event given the nature of the claim that [Mr. Rana] provided potentially false testimony to this Court in order to obtain an immigration benefit from this Court, the matter would otherwise be reopened upon the Court's own motion and authority." Admin. R. at 300. The IJ was clearly invoking his power to reopen the case *sua sponte* as an alternate ground for his order. While 8 C.F.R. § 1003.23(b)(3) states that "[a] motion to reopen will not be granted unless the [IJ] is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing," no similar constraint is imposed on the IJ's power to reopen a case upon his own motion.

　Mr. Rana's second argument is that even if the IJ reopened the case *sua sponte*, it was an abuse of discretion for him to do so. We do not have

-9-

jurisdiction to review this argument. In *Belay-Gebru v. INS*, 327 F.3d 998, 1000-01 (10th Cir. 2003), we held that we had no jurisdiction to review the BIA's decision on whether to *sua sponte* reopen a case under 8 C.F.R. § 1003.2(a) because the regulation provided "no meaningful standard against which to judge the BIA's exercise of its discretion."[5] Although *Belay-Gebru* concerned a discretionary decision of the BIA, the same logic applies here in regards to the IJ's decision.

The same logic does not, however, limit our ability to review Mr. Rana's arguments that an IJ's decision to reopen a case in which adjustment of status has been previously granted and the government has waived its right to appeal violates both the doctrine of res judicata and his due process rights under the Fifth Amendment. These purely legal arguments, to which we now turn, require no determination of the limits of the IJ's discretion.

2. Claim Preclusion.

Under 8 C.F.R. § 1003.39, "[e]xcept when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." Mr. Rana argues that he received a final judgment granting adjustment of status

---

[5]    In relevant part, 8 C.F.R. § 1003.2(a) reads:  "The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."

and that claim preclusion barred the reopening of the proceedings once appeal

was waived.[6]

Claim preclusion has been applied in the immigration context. *See, e.g.,*

*Medina v. INS*, 993 F.2d 499, 503-04 (5th Cir. 1993) (holding that once an

immigrant was granted citizenship, res judicata prevented the initiation of new

deportation proceedings against him). "The fundamental policies underlying the

doctrine of res judicata (or claim preclusion) are finality, judicial economy,

preventing repetitive litigation and forum-shopping, and the interest in bringing

---

[6]     Although Mr. Rana uses the term res judicata, we will refer to the doctrine
of claim preclusion for purposes of clarity. As we explained in *Migra v. Warren
City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n.1 (1984):

> Res judicata is often analyzed . . . to consist of two preclusion
> concepts: "issue preclusion" and "claim preclusion." Issue
> preclusion refers to the effect of a judgment in foreclosing
> relitigation of a matter that has been litigated and decided. This
> effect also is referred to as direct or collateral estoppel. Claim
> preclusion refers to the effect of a judgment in foreclosing litigation
> of a matter that never has been litigated, because of a determination
> that it should have been advanced in an earlier suit. Claim
> preclusion therefore encompasses the law of merger and bar.

We read Mr. Rana's argument to be that claim preclusion foreclosed the IJ's
litigation of the issue of inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)
after reopening because that issue should have been raised at the previous
hearing. The main reason for this reading is that the main case he cites to support
his argument, *Medina v. INS*, 993 F.2d 499, 503-04 (5th Cir. 1993), addresses
claim preclusion. The same analysis would apply, however, if the argument was
considered to be one of issue preclusion: i.e., that the issue of Mr. Rana's
adjustment of status had been litigated and could not properly be relitigated.

-11-

litigation to an end." *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (quotation omitted).

Nevertheless, it is clear that there are situations in which claim preclusion does not prevent the reopening or reconsideration of a final judgment. For example, relief may be had from "final" district court judgments under Federal Rule of Civil Procedure 60. *See State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1082 (10th Cir. 1996) (holding that res judicata bars *collateral* but not *direct* attacks on a final judgment and that "Rule 60(b) provides a procedural avenue whereby, in appropriate circumstances, a party may assert a direct attack on a final judgment or order"). We see no reason-and Mr. Rana does not present one-that the doctrine of claim preclusion should bar reopening a "final" decision of an agency in accordance with the immigration regulations but allow relief from a "final" judgment of a district court under Rule 60(b).

3. Due Process.

Mr. Rana argues that the IJ's failure to follow the rescission procedures in 8 U.S.C. § 1256(a) violated his due process rights. Section 1256(a) reads:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to

-12-

the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

Mr. Rana relies on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). In *Accardi*, the Attorney General had circulated to all employees in the immigration service a list of individuals whom he wished to deport. The list included the petitioner, and the circulation occurred prior to the BIA's denial of his application for suspension of deportation. The district court had denied the writ on the pleadings. The Supreme Court concluded that, assuming the truth of the allegations that the BIA based its decision of the Attorney General's list, the BIA ignored regulations requiring it to exercise its own discretion, thereby violating petitioner's due process rights. *Id.* at 266-68.

*Accardi* is distinguishable from the case at hand. Here, unlike the BIA in *Accardi*, the IJ complied with the federal regulations. As discussed previously, and as acknowledged by Mr. Rana, the regulations allow the IJ "upon his or her own motion at any time . . . [to] reopen or reconsider any case in which he or she has made a decision . . . ." 8 C.F.R. § 1003.23(b)(1).

Mr. Rana's argument might be valid if rescission was the only regulatory method of reversing a decision adjusting status. Mr. Rana does argue that the government "must have first instituted rescission procedures . . . before the [IJ]

denied [Mr. Rana's] adjustment application." Pet'r Br. at 17. But the legal authority cited for this proposition, *Matter of Saunders*, 16 I. & N. Dec. 326 (BIA 1977), is inapposite. In that case the BIA held that if, within five years of an immigrant's adjustment of status, it appeared the immigrant was not eligible for the adjustment, the government could not institute new deportation procedures without first rescinding the adjustment. The limit of an IJ's power to reopen a case *sua sponte* was not at issue. Consequently, we disagree with Mr. Rana that rescission was the only regulatory avenue available and the IJ violated his due process rights by reopening on his own motion.

B. Adequacy Of The BIA's Decision.

Mr. Rana argues that the BIA abused its discretion because it "failed to consider and address the crucial arguments relating to the legality of reopening his previous hearing." Pet'r Br. at 18. Mr. Rana is correct in claiming that he is entitled to a reasoned decision. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1230 (10th Cir. 2004). Here, the BIA adopted the decision of the IJ denying adjustment of status and found "that the [IJ] did not abuse his discretion in reopening proceedings." Admin. R. at 16. We held in *Yuk* that the reasoned decision provided to an immigrant may be the IJ's decision and not the BIA's. *Id.* Mr. Rana argues that the IJ's decision was not reasoned either. We disagree. Both the order reopening the case and the oral decision denying adjustment of status after reopening adequately discussed the IJ's reasons for reopening.

-14-

Mr. Rana also appears to argue that the BIA's review was inadequate because the BIA "refrained from citing any case law or other authoritative references in support of their decision." Pet'r Br. at 18. Mr. Rana provides no authority to support his claim that citation to case law is a necessary element of a reasoned decision, and we are not convinced that is the case.

C.  False Representation of Citizenship.

Mr. Rana's final argument is that the IJ erred in finding that he falsely represented himself to be a United States citizen. Under 8 U.S.C. § 1182(a)(6)(C)(ii)(I): "[a]ny alien who . . . has falsely represented[] himself . . . to be a citizen of the United States for any purpose or benefit under" the immigration law or any other federal or state law, is inadmissible. The parties do not dispute that no waiver is available for this ground of inadmissability. On a number of I-9 employment forms, Mr. Rana marked a box declaring he was a "citizen or national" of the United States. Admin. R. at 311-14. At the hearing following reopening of the case Mr. Rana testified more than once that by marking this box he had represented that he was a citizen of the United States. *See, e.g., id.* at 286, 291, 293, 295.

Mr. Rana argues that marking the "citizen or national" box on his I-9s did not make him ineligible for adjustment of status because a false claim of United States *nationality* is not grounds for inadmissability under 8 U.S.C.

-15-

§ 1182(a)(6)(C)(ii)(I).[7] Mr. Rana relies on *United States v. Karaouni*, 379 F.3d 1139 (9th Cir. 2004) to support this argument. In *Karaouni*, an alien checked the "citizen or national" box on an I-9 and was convicted of violating 18 U.S.C. § 911, which makes it a crime for a person to "falsely and willfully represent[] himself . . . to be a citizen of the United States." The Ninth Circuit recognized that penal statutes are to be strictly construed and concluded that § 911 prohibited false claims of citizenship but not false claims of nationality and that the alien's conviction for asserting he was either a citizen *or* a national could not stand. *Karaouni*, 379 F.3d at 1143. The court deemed irrelevant the alien's apparent subjective belief that he had falsely represented United States citizenship on his I-9, as evidenced by his alleged admission to an INS agent to that effect, because "[a] defendant may not be convicted on the basis of an admission that he committed a crime, when the actions that he believed to be unlawful did not, in fact, violate any statute." *Id*. at 1145. *Karaouni* is distinguishable from the case at issue because it concerned a criminal statute and the burden was on the government to prove beyond a reasonable doubt that Mr. Karaouni was guilty.

We find more persuasive the Eighth Circuit's reasoning in *Ateka v. Ashcroft*, 384 F.3d 954 (8th Cir. 2004), a case very similar to the one before us. That case also concerned an alien who checked the "citizen or national" box on

---

[7] Because we have determined that reopening was not improper, we need not address Mr. Rana's argument that his testimony following reopening should not be considered for that reason.

his I-9 in order to obtain employment. The alien subsequently married a United States citizen and applied to adjust status. When interviewed by an INS officer and asked whether he had "made a false claim to United States citizenship on his Form-I-9, he answered three times that he had." *Id*. at 956. At a hearing before the IJ, the alien claimed that when he checked the "citizen or national" box he was "making what he thought might be the truthful representation that he was a 'national of the United States.'" *Id*. at 957. The IJ had found this claim not credible because of the alien's three admissions that he had falsely claimed citizenship and because he testified that he did not know what a "national" was. The IJ found the alien was precluded from adjusting status.

The Eighth Circuit held that the marked "citizen or national" box and the alien's testimony that he had falsely claimed citizenship constituted "substantial evidence . . . support[ing] the immigration judge's finding that [the alien] had intentionally made a false representation of United States citizenship in order to procure employment." *Id*.

Here, Mr. Rana checked the "citizen or national" box on his I-9s and testified that he had falsely represented himself as a citizen of the United States. In fact, there was no discussion at the hearing of the difference between citizenship and nationality, and both parties simply referred to the box marked by Mr. Rana the "citizenship" block or box. Mr. Rana's defense was that his initial employer had advised him to mark that he was a citizen because he had a social

security card and a driver's license and that he did not mark the box for lawful permanent resident because he did not have a green card. Consequently, we believe that substantial evidence supports the IJ's finding that Mr. Rana made a false representation of citizenship. We cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (quotation omitted).

## IV. CONCLUSION

In light of the above, Mr. Rana's petition for review is DENIED.

Entered for the Court

Monroe G. McKay
Circuit Judge