**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HERDEL RICARDO DAUBON,

Defendant-Appellant.

No. 08-2189
(D.C. No. 2:08-CR-00833-RB-2)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**I. INTRODUCTION**

Following a jury trial, defendant–appellant Herdel Ricardo Daubon was found guilty of falsely representing himself to be a United States citizen, in violation of 18 U.S.C. § 911. On appeal, he argues that there was insufficient evidence to convict him of that offense. We have jurisdiction under 28 U.S.C. § 1291, and we **AFFIRM**.

**II. BACKGROUND**

Mr. Daubon was indicted for false representation of U.S. citizenship, in

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 18 U.S.C. § 911, as well as drug conspiracy and possession, after Border Patrol agents found bags of marijuana in the semi-truck he was driving. R., Vol. I., at 8–10 (Grand Jury Indictment).

The relevant trial testimony was as follows: Border Patrol Agent Daniel Aguilera was working at a Border Patrol checkpoint when a semi-truck driven by Mr. Daubon pulled up to the checkpoint. R., Vol. III, pt. 1, at 168 (Trial Transcript). A man named Glenroy James was in the passenger seat. *Id.* pt. 2, at 580. Agent Aguilera testified:

> A. First I greeted both of them, and then I asked them for their citizenship, and they both stated they were United States citizens.
> Q. Okay. When you say "they both," who are you referring to?
> A. The driver and the passenger.
> Q. And you're sure that the defendant [i.e., Mr. Daubon] indicated he was a U.S. citizen?
> A. Yes.

*Id.* pt. 1, at 170–71.

Agent Aguilera also asked for Mr. Daubon's origin and destination, but had trouble understanding Mr. Daubon when Mr. Daubon said the names of the respective cities. *Id.* at 171–72. However, Agent Aguilera did not otherwise have trouble understanding Mr. Daubon. *Id.* at 202–03.

Agent Aguilera then asked to see the semi-truck's bill of lading, and noticed that Mr. Daubon appeared nervous. *Id.* at 172. Agent Aguilera then asked for permission to look into the semi-truck's sleeper cabin, where he found black duffel bags. *Id.* at 174–75. Shortly thereafter, a canine inspection revealed that the duffel

bags contained marijuana. *Id.* at 209–13.

Mr. Daubon testified that, before arriving at the Border Patrol checkpoint, the other passenger of the semi-truck, Mr. James, had placed duffel bags into the vehicle. *Id.* pt. 2, at 574. Mr. Daubon testified that when he saw the bags he became nervous and wondered why the bags were in the semi-truck. *Id.* Mr. Daubon further testified that once he arrived at the Border Patrol checkpoint he never answered Agent Aguilera when Agent Aguilera asked for his citizenship. *Id.* at 621. Instead, he testified that "Mr. James, he answered over the top of me, Yes." *Id.* at 580.

Mr. Daubon also entered into a stipulation which was admitted at trial and read to the jury. *Id.* at 373. In relevant part, the stipulation stated:

1.   Defendant was born in Jamaica on April 15, 1971.
2.   Defendant has been a Jamaican national/citizen since his birth date.
3.   Defendant has never applied to become a United States citizen.
4.   Defendant has had legal permanent residency status since March 5, 1987.

R., Vol. III, pt. 2, at 373 (Trial Transcript–Recitation of Stipulation to Jury).

Mr. Daubon further testified that he attended an immigration proceeding in 1996, and after that proceeding he remained a legal permanent resident. R., Vol. III, pt. 2, at 639 (Trial Transcript). He did not later attend any other immigration proceedings. *Id.* He admitted that he had his resident alien card in his backpack in the semi-truck. *Id.* at 617, 619. He further testified that he was aware that he was required to carry and produce his permanent resident card. *Id.* at 617.

However, Mr. Daubon testified that he was confused about his citizenship on the date of his arrest. *Id.* at 628–29. In addition, another Border Patrol agent, Steven Sienkiewicz, spoke to Mr. Daubon while Mr. Daubon was being processed. *Id.* at 672. Agent Sienkiewicz described this conversation:

> Q. So at the very minimum, according to your recollection of this conversation, Mr. Daubon was confused about what his status was?
> A. Yes, sir.

*Id.*

The jury acquitted Mr. Daubon of the drug offenses, but found him guilty of falsely representing himself to be a U.S. citizen. *Id.* at 829. He was sentenced to the lesser of four months in prison or time served. R., Vol. I, at 80 (District Court Judgment). He now appeals.

## III. DISCUSSION

Mr. Daubon argues that insufficient evidence was presented to convict him of violating 18 U.S.C. § 911. We ordinarily review sufficiency of the evidence claims *de novo*. *United States v. Williams*, 403 F.3d 1188, 1194 (10th Cir. 2005). But here, although Mr. Daubon challenged the sufficiency of the evidence to support the drug offenses, he did not do so with regard to the § 911 charge. Therefore, we review his sufficiency challenge for plain error. *See United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (holding that when a defendant challenges in district court the sufficiency of the evidence on specific grounds, all grounds not specified in the

motion are waived and subject to plain error review). But a conviction with insufficient evidence ordinarily constitutes plain error. *See id.*

When determining whether sufficient evidence underlies a conviction, we view all the evidence in the light most favorable to the government. *Williams*, 403 F.3d at 1194. Ultimately, we determine whether the evidence and all reasonable inferences drawn therefrom could allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.* The jury has discretion to resolve all conflicting testimony. *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999). Moreover, we do not consider witness credibility. *United States v. Poe*, 556 F.3d 1113, 1125 (10th Cir. 2009).

18 U.S.C. § 911 renders criminally liable anyone that "falsely and willfully represents himself to be a citizen of the United States." 18 U.S.C. § 911. Therefore, a § 911 conviction requires, at a minimum, proof that (1) the defendant represented himself or herself to be a U.S. citizen, (2) the defendant was not a U.S. citizen when the representation was made, and (3) the representation was willful.[1]

_____

[1]The Ninth Circuit has held that § 911 requires that an additional element not explicitly included in the statute be proven–that the misrepresentation was made to someone with good reason to inquire into the defendant's citizenship. *United States v. Karaouni*, 379 F.3d 1139, 1142 (9th Cir. 2004). The Ninth Circuit adopted this additional requirement in response to First Amendment overbreadth challenges. *Id.* at 1142 n.7. Even assuming that this element must be proved in a § 911 prosecution, Mr. Daubon has not challenged the sufficiency of the evidence with regard to this element. However, we have little doubt that Agent Aguilera, a Border Patrol Agent manning a Border Patrol checkpoint, was someone with a good reason to inquire into Mr. Daubon's citizenship.

(continued...)

-5-

On appeal, Mr. Daubon argues that there was insufficient evidence that he told Agent Aguilera that he was a U.S. citizen. He further argues that, even if there is sufficient evidence of such a representation, there is insufficient evidence that the representation was willful and not a result of confusion.

## A. Representation of U.S. Citizenship

We are convinced that a reasonable jury could have found that Mr. Daubon represented himself to be a U.S. citizen to Border Patrol Agent Aguilera. The indictment on Count 4 charged that, on or about April 14, 2008, Mr. Daubon knowingly and willfully represented to Agent Aguilera, a person having good reason to inquire into the nationality status of Mr. Daubon, "that he was a citizen of the United States; whereas, in truth and fact, as [Mr. Daubon] then and there well knew, he was not a citizen of the United States." R., Vol. I, at 9 (Grand Jury Indictment). Agent Aguilera testified that when he asked for Mr. Daubon's citizenship, Mr. Daubon stated that he was a U.S. citizen. Agent Aguilera further testified that, while he had trouble understanding Mr. Daubon's explanation of his origin and destination, he did not otherwise have trouble understanding Mr. Daubon.

Although Mr. Daubon testified that he never answered Agent Aguilera when Agent Aguilera asked for his citizenship, the jury was entitled to disbelieve this testimony, and instead accept Agent Aguilera's version of the events. *See Anderson*,

---

[1](...continued)

189 F.3d at 1205 (holding that the jury has discretion to resolve all conflicting testimony). Therefore, sufficient evidence was presented that Mr. Daubon represented himself to be a U.S. citizen. *See Rodriguez v. United States*, 433 F.2d 964, 965 (9th Cir. 1970) (holding that the defendant sufficiently represented himself to be a U.S. citizen when he stated that he was a U.S. citizen in response to an inquiry into his country of citizenship).

## B. Willfulness

Mr. Daubon further argues that, even if there is sufficient evidence that he represented himself to be a U.S. citizen, there is insufficient evidence that he did so willfully and not as a result of his confusion. We disagree.

In this circuit, we adhere to the law of the case doctrine, whereby the Government is required to prove all elements put forth in unchallenged instructions to the jury, even if the Government would not, under law, be otherwise required to do so. *United States v. Romero*, 136 F.3d 1268, 1273 (10th Cir. 1998). Therefore, if the Government agrees to the district court's instructions on an element of an offense, and does not offer sufficient evidence as to that element, a conviction for that offense must be reversed. *See id.* at 1274.

Here, Instruction 14 informed the jury that the Government was required to prove that "the defendant knew he was not a citizen and deliberately made this false statement with intent to disobey or disregard the law." This instruction was unchallenged. Therefore, rather than determining the meaning of "willfully" as that

-7-

term is used in § 911, we must instead determine if sufficient evidence was presented to satisfy the requirements of Instruction 14.

Applying that instruction to the evidence submitted, sufficient evidence was presented that Mr. Daubon "knew he was not a citizen and deliberately made this false statement with intent to disobey or disregard the law." First, sufficient evidence was presented that Mr. Daubon knew he was not a citizen. He stipulated that he had never applied for citizenship, had been a legal permanent resident since 1987, and had his permanent resident card in the semi-truck as it pulled up to the Border Patrol checkpoint. The jury was entitled to disbelieve Mr. Daubon's testimony that he was confused about his citizenship on the date of his arrest, and was likewise entitled to reject Agent Sienkiewicz's conclusion that Mr. Daubon was confused. *See Poe*, 556 F.3d at 1125 (holding that the court of appeals does not weigh conflicting evidence or consider witness credibility); *United States v. Caldwell*, 560 F.3d 1214, 1220 (10th Cir. 2009) (holding that false exculpatory testimony may prove circumstantially consciousness of guilt or unlawful intent).

Second, there is sufficient evidence that Mr. Daubon deliberately made this false statement with intent to disobey or disregard the law. Sufficient evidence was presented from which the jury could infer that Mr. Daubon knew representing himself to be a U.S. citizen was unlawful. 8 U.S.C. § 1304(e) requires every alien over eighteen to carry his permanent resident card at all times. 8 U.S.C. § 1304(e). The Board of Immigration Appeals has indicated that § 1304(e) also requires an alien

to produce his or her permanent resident card when it is requested. *See In re Yau*, 14 I. & N. Dec. 630 (B.I.A. 1974). Mr. Daubon testified to his awareness of these requirements by stating that he knew that he was required to carry and produce his permanent resident card. A jury could reasonably conclude that it is highly unlikely that Mr. Daubon would know that a permanent resident's failure to produce his permanent resident card is unlawful and yet simultaneously believe that a permanent resident's total denial of his permanent residency status (by representing himself to be a U.S. citizen) to a Border Patrol agent carries no legal consequences.

Moreover, Mr. Daubon had a motive to lie about his citizenship. Mr. Daubon testified that when he first saw the duffel bags placed in the semi-truck by Mr. James he became nervous. From this, the jury could infer that Mr. Daubon lied about his citizenship to avoid any delay that would increase the risk that the unknown contents of the bags would be discovered and cause him to be held responsible. Therefore, sufficient evidence was presented that Mr. Daubon willfully represented himself to be a U.S. citizen as defined in Instruction 14.

## IV. CONCLUSION

We conclude that sufficient evidence was presented for a reasonable jury to conclude that Mr. Daubon violated § 911. Therefore, no plain error is present.

Accordingly, we **AFFIRM**.

Entered for the Court,


William J. Holloway, Jr.
Circuit Judge