United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 25, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————

No. 05-60980

—————————

BROOK EMMANUEL THEODROS,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. Attorney General,

Respondent.

—————————

Petition for Review of an Order of
the Board of Immigration Appeals

—————————

Before GARWOOD, BARKSDALE, and GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

Brook Emmanuel Theodros (Theodros) petitions this court to
review the decision of the Board of Immigration Appeals (BIA)
affirming an immigration judge's ruling that he was removable and
denying his application for status adjustment because he had made
a false claim to United States citizenship to gain employment.
For the following reasons, the petition is DENIED.

**I.**

Theodros, a native of Ethiopia and a citizen of Italy, came
to the United States with his father in 1987, when he was
thirteen years old, as a derivative E-2 visa holder benefitting

from his father's E-1 status.  Theodros's E-2 status was valid until 1993, when he reached the age of eighteen.  In 1993 and 1994, he served prison sentences in California for three convictions for offenses of receiving stolen property—offenses categorized as crimes involving moral turpitude.  After completing his sentences, Theodros moved to Dallas, Texas, where he worked for four-and-a-half years at a hotel, the Marriott.  Then, from 1999 to 2003, Theodros worked for Nortel in Dallas and, in 2003, Theodros moved to Hawaii to manage commercial real estate.

On November 24, 2003, the Department of Homeland Security (DHS)issued Theodros a Notice to Appear, charging him with removability under 8 U.S.C. § 1227(a)(1)(B)[1] of the Immigration and Nationality Act (INA) since he remained in the United States after the expiration of his visa.  To avoid deportation, Theodros sought an adjustment of status under 8 U.S.C. § 1255(a), which

---

[1]8 U.S.C. § 1227(a)(1)(B) provides:
"**(a) Classes of deportable aliens**[:] Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: **(1) Inadmissible at time of entry or of adjustment of status or violates status . . . . (B) Present in violation of law**[;] Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

requires, *inter alia*, an alien to be "admissible to the United States" in order to qualify for a status adjustment.[2]  Since Theodros was inadmissible under 8 U.S.C. § 1182(a)(2)(A) because he had committed crimes of moral turpitude, he sought a waiver of inadmissibility under 8 U.S.C. §§ 1182(a)(2)(F) and (h) due to the extreme hardship his removal would cause his wife, a United States citizen.  Therefore, if this waiver of inadmissibility were granted, Theodros would be deemed admissible and eligible for a status adjustment under 8 U.S.C. § 1255(a)(2).

Subsequently, at the initial hearing before the Immigration Judge (IJ) on March 12, 2004, the IJ asked Theodros whether he had authorization to work in the United States prior to his wife's I-130 petition and Theodros responded that he first received authorization in 2000.[3]  The IJ then asked Theodros how he obtained jobs prior to 2000, and Theodros answered that he

---

[2]8 U.S.C. § 1255(a) provides:
"The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

[3]At all times throughout all the proceedings Theodros was represented by legal counsel.

3

"didn't tell the truth." The government then asked Theodros whether he "ever told somebody [he was] a U.S. citizen", and Theodros replied, "On the jobs, yes, I did. On the job application where it says, when it asks on that, I did." The IJ then suspended the hearing and, six weeks later, on April 23, 2004, DHS filed an additional charge against Theodros. DHS alleged that, first, in his testimony on March 12, 2004, Theodros admitted to falsely claiming United States citizenship to gain employment and, second, that in November 1999, Theodros represented himself as a United States citizen to gain employment at Nortel. Based on those allegations, DHS charged Theodros with removability under 8 U.S.C. § 1227(a)(3)(D)(i)[4] for falsely representing he was a United States citizen. This additional charge jeopardized Theodros's admissibility because 8 U.S.C. § 1182(a)(6)(C)(ii)(I)[5] provides that such a false representation of citizenship renders an alien inadmissible—and, unlike inadmissibility caused by committing crimes involving moral turpitude, no waiver is available for inadmissibility caused by

[4] 8 U.S.C. § 1227(a)(3)(D)(i) provides: "Any alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any Federal or State law is deportable."

[5] 8 U.S.C. § 1182(a)(6)(C)(ii)(I) provides: "Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible."

4

such false claiming of citizenship.

At the subsequent hearing on July 6, 2004, Theodros's wife testified that she is supported by the rental income from the commercial real estate managed by her husband and would not be capable of managing the property by herself if Theodros were deported. Theodros also testified, admitting he made false claims of United States citizenship to gain employment but stating that he could not now remember to which employers he thus lied or just when he did so. And, when asked "You don't know what you told Nortel in 1999," Theodros replied "I can't say 100 percent." The government introduced a document from Theodros's Nortel employment application entitled "Determination of Eligibility to Work on Jobs Affected by U.S. Export Control Laws", signed by Theodros and dated November 20, 1999. In this document, Theodros answered affirmatively the question asking whether the signatory was a United States citizen or permanent resident. Theodros's counsel then stated that Theodros admitted that he had made claims to United States citizenship to obtain employment, but further stated, with respect to the allegation that on November 20, 1999 Theodros had claimed to be a United States citizen for purposes of obtaining employment at Nortel, that "we're going to deny that, Your Honor."

The IJ ruled he "would be inclined to grant the respondent adjustment and the [hardship] waiver" but that "the issue before

5

the Court is whether there has been a false claim to U.S. citizenship, since in the Court's understanding of the law, that removes any discretion that the Court might otherwise have." Finding that Theodros had made a false claim to United States citizenship to gain employment, and that this is an unwaivable ground of inadmissibility, the IJ denied Theodros's request for adjustment of status and ordered him to depart voluntarily or be deported.

Theodros timely appealed to the BIA, which adopted and affirmed the IJ's decision and dismissed Theodros's appeal. Theodros then filed in this court a petition for review raising the same claims presented to the BIA—essentially that the IJ's decisions denying Theodros's application for status adjustment and the waiver of inadmissibility were based on insufficient evidence and that the IJ erred in interpreting the bar to admissibility in 8 U.S.C. § 1182(a)(6)(C)(ii)(I) as applying to false claims of United States citizenship to gain private sector employment. Theodros's motion for a stay of removal pending review was denied. For the following reasons, we deny Theodros's petition.

## II.

"We review factual findings of the Board to determine if they are supported by substantial evidence in the record." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). "When, as

6

here, the BIA affirms the immigration judge and relies on the reasons set forth in the immigration judge's decision, this court reviews the decision of the immigration judge as well as the decision of the BIA." *Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006).

Theodros seeks review of the IJ and BIA decisions finding he made a false claim of United States citizenship under 8 U.S.C. §§ 1227(a)(3)(D)(i) and 1182(a)(6)(c)(ii)(I). He argues that the finding rests on insufficient evidence and on an incorrect interpretation of the INA.

## A. False Representation of Citizenship

Theodros argues that substantial evidence does not support the finding that he falsely claimed United States citizenship. We review the BIA's factual findings for substantial evidence, with deference given to the IJ's credibility determinations. We affirm the decision unless the "evidence compels a contrary conclusion." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996). "In other words, the alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it. This court reviews conclusions of law *de novo* (although with the usual deference to the Board's interpretations of ambiguous provisions of the Act in accordance with *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))." *Id.*

7

(citations omitted).

While under oath at his March 12, 2004 hearing, Theodros admitted he had falsely claimed citizenship in order to obtain employment before securing a work permit. However, he argues that his admission is too vague to support a finding that he did so after the September 30, 1996 effective date of 8 U.S.C. §§ 1227(a)(3)(D) and 1182(a)(6)(C)(ii)(I). *See* Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996) § 344(c). Under 8 U.S.C. § 1227(a)(3)(D)(i), "Any alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is deportable." *See also* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (same language but rendering the alien inadmissible). Both parties agree that no waiver is available for this ground of inadmissibility.

Theodros argues that he did not specify the employment for which he admits making the false representations of citizenship, and all of his employment prior to the Nortel job (which began in 1999) began prior to September 30, 1996. He also argues that the Nortel form cannot establish that he made a false representation for that employment since he could have (falsely) indicated he was a lawful permanent resident, which does not lead to the same

8

non-waivable bar to admissibility as falsely representing United States citizenship.

To support the IJ's finding of a false representation of citizenship, the government provided as rebuttal evidence at the July 6, 2004 hearing a Nortel employment document[6] signed by Theodros on November 20, 1999, where he indicated a simple affirmative answer to the question asking whether he was a United States citizen *or* a permanent resident—with language substantially similar to that on the Form I-9. Additionally, Theodros testified under oath in court that he had represented himself as a United States citizen to gain employment. In his testimony he could not deny that he had done so to Nortel in 1999. The IJ had asked Theodros, during the discussion of how he had gained employment prior to his wife's 2001 petition, "[H]ave you ever told somebody you're a U.S. citizen" and Theodros responded, after initially denying the question, "On the jobs, yes, I did. On the job application where it says, when it asks on that, I did."

After reviewing the record, we cannot say as a matter of law that the IJ was incorrect.[7] Oral testimony and documentary

---

[6]The government could not obtain a Form I-9 from Nortel, which was described by government counsel as "very, very uncooperative" and "very, very difficult."

[7]Theodros's case is distinguishable from other cases cited, such as the Ninth Circuit's *United States v. Karaouni*, 379 F.3d 1139 (9th Cir. 2004), and *United States v. Mulumba*, 162 Fed.Appx.

9

evidence (including Theodros's testimony that he had falsely claimed citizenship in connection with "the jobs," plural, and admitted at that time, before changing his story again, having had only two jobs prior to 2001—Marriott and Nortel) clearly support the IJ's finding that he falsely represented to employers that he was a United States citizen.[8]  Other circuits have held similarly.  *See Ateka v. Ashcroft*, 384 F.3d 954, 956–57 (8th Cir. 2004) (same finding under 8 U.S.C. § 1182(a)(6)(C) of the INA, which has language identical to 8 U.S.C. § 1227(a)(3)(D)); *Rana*

---

274, 2005 WL 3226852 (5th Cir. 2005) (unpublished).  In both of these cases, the immigrants' criminal convictions were reversed when the sole evidence of their false and willful representations of United States citizenship described in the opinions was their respective checking of the same I-9 box language at issue here, and the cases pertained to aliens charged with making a false claim under 18 U.S.C. § 911, a criminal statute carrying the higher burden of beyond a reasonable doubt.  *Karaouni*, 379 F.3d at 1145; *Mulumba*, 2005 WL 3226852 at *1.  Also, the statutory language is distinguishable, since 18 U.S.C. § 911 expressly requires a willful misrepresentation.  *See Rana v. Gonzales*, 175 Fed.Appx. 988, 2006 WL 1389118 (10th Cir. 2006) (following the Eighth Circuit's *Ateka* in a similar case and distinguishing the Ninth Circuit's *Karaouni*).  In contrast, § 1227(a)(3)(D)(ii) and § 1182(a)(6)(C)(ii)(II) each make an exception for certain aliens who (unlike Theodros) are children of a citizen and "reasonably believed . . . that he or she was a citizen."

[8]We also note that Theodros never claimed he thought he was a lawful permanent resident or that he ever represented himself as such, and he admitted that he had represented himself as a United States citizen in connection with applying for employment. In his testimony he did not deny having so "told Nortel in 1999."

And, both § 1227(a)(3)(D)(i) and § 1182(a)(6)(C)(ii)(I) include oral as well as written false representations of citizenship "for any purpose or benefit under this chapter (including sections 1324(a) of this title) . . ."

10

*v. Gonzales*, 175 F. Appx. 988, 996–97 (10th Cir. 2006) (unpublished; same).

### B. Private Sector Employment

Theodros next argues that even if he falsely claimed United States citizenship to gain or retain employment, seeking private-sector employment does not fall under any purpose under the INA, federal or state law required to make him inadmissible under 8 U.S.C. § 1227(a)(3)(D).

When a statute is arguably ambiguous, as is the case here, we give deference as described in *Chevron*, 104 S.Ct. at 2793, to the BIA's interpretation of the statutory provision, and then review the BIA's legal conclusions *de novo*. *Smalley v. Ashcroft*, 354 F.3d 332, 335-36 (5th Cir. 2003) (affirming the BIA's definition of "moral turpitude," which was not defined by the statute, giving its interpretation *Chevron* deference). As we have explained, "this two-step approach provides both consistency—concerning the meaning of [the statute at issue]—and a proper regard for the BIA's administrative role—interpretation of federal immigration laws." *Id.*

8 U.S.C. § 1227(a)(3)(D)(i) requires the false representation of citizenship to have been made "for any purpose or benefit under this chapter (including section 1324a of this title) or any Federal or State law." 8 U.S.C. § 1324a makes it illegal for any (or almost any – no exception is claimed here)

11

employer—public or private—to hire or continue to employ an unlawful or unauthorized alien. Indeed, 8 U.S.C. §1324a(b) requires employers to verify the eligibility of their potential employee by, for example, completing an employment verification form. Therefore, the BIA found that private sector employment was a "purpose or benefit" under section 1227(a)(3)(D):

> "The plain language of the statute belies [Theodros's] arguments, as the statute provides that "any purpose or benefit under this Act" is inclusive of section 274A [8 U.S.C § 1324a], the rules governing unlawful employment of aliens by private or government entities. Reference to that section immediately following the "purpose or benefit" clause of section 237(a)(3)(D)(i) [8 U.S.C. § 1227(a)(3)(D)(i)] informs the inference that employment is an example of the sort of purpose or benefit contemplated in the statute. Further, the statute imposes no requirement that the "purpose or benefit" obtained through the false citizenship representation be obtained through a federal or state agency. Instead, the statute deems removable an alien who obtains a purpose or benefit otherwise available through the Act or through any federal or state law, through misrepresenting his citizenship status."

As the BIA also recognizes, there is no published authority finding that private employment is not a benefit or purpose under the Act. Indeed, there is nothing in this record or in any relevant authority, cited by the parties or otherwise, that leads this court to find that the BIA's construction of the statute is not reasonable or "permissible." *See Chevron*, 104 S.Ct. at 2793.

## III.

For the foregoing reasons, Theodros's petition is

DENIED.

12