# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 5, 2010

Charles R. Fulbruge III
Clerk

No. 09-60048
Summary Calendar

HORTENCE SYLVIE KAMBIWA,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A097 636 162

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Hortence Sylvie Kambiwa ("Kambiwa") seeks review of an order of the Board of Immigration Appeals ("BIA") dated December 29, 2008, dismissing her appeal of the Immigration Judge's ("IJ") denial of her

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

applications for asylum, withholding of removal, and protection pursuant to the regulations implementing the Convention Against Torture ("CAT"). Because we find the BIA's decision supported by substantial evidence, we DENY the petition.

## I. BACKGROUND

Kambiwa is a female native of Cameroon who was admitted to the United States on April 1, 2003, as a nonimmigrant visitor with authorization to remain until September 30, 2003. She filed an application for asylum and withholding of removal with the Department of Homeland Security ("DHS"), claiming that she is a member of the Bamileke tribe in Cameroon and opposed her arranged marriage. Kambiwa's application was denied. On October 15, 2003, DHS issued a Notice to Appear, charging her with removability pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act, ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States longer than permitted. On November 4, 2003, Kambiwa appeared in Immigration Court and admitted the allegations in the Notice.

On January 27, 2004, Kambiwa again appeared in Immigration Court for a merits hearing regarding her applications for asylum, withholding of removal, and protection pursuant to CAT. Kambiwa submitted supporting exhibits with her applications, including her birth and marriage certificates and letters from her mother and husband. After DHS objected, the IJ marked the certificates only for identification purposes because they were not completely translated and were not authenticated.[1] The IJ also admitted the letters into evidence, but noted that the letters would be given very little weight.

To support her application, Kambiwa presented witness testimony of Herbert Nitcheu ("Nitcheu"). Nitcheu, a member of the Bamileke tribe from Cameroon, testified regarding the practice of arranged marriages in the tribe,

---

[1] The IJ admitted a medical certificate that had been properly translated and to which the DHS had no objection.

and that a woman who refused to enter into an arranged marriage would face punishment. Nitcheu admitted that he did not know Kambiwa and met her for the first time on the day of his testimony.

Kambiwa also testified regarding the allegations in her applications. Kambiwa claimed that a man named Jean Ndjambou ("Ndjambou"), who already had nine wives, came to her family home in March 2001 to request her hand in marriage. In June 2001, Kambiwa traveled with her uncles to the local village to marry Ndjambou. When she refused, however, her uncles became upset and punished her by shaving her head and putting pepper in her eyes and vagina. Kambiwa also testified that she was kept in Ndjambou's home against her will. When she refused to have relations with Ndjambou, he threatened to kill her and a man named Valentin Nguetsa ("Nguetsa"), Kambiwa's then-fiancé. Kambiwa testified that she managed to escape Ndjambou's home in February 2002 with the help of Ndjambou's first wife. Kambiwa also testified that after she married Nguetsa in April 2002, her uncles consulted with a village "charlatan witch man" to kill her by leaving "a traditional remedy" on her door step. Kambiwa testified that she then ran away with Nguetsa to his parents' house until she came to the United States. Nguetsa remains in Cameroon, as do her children. Kambiwa claims that in August 2003, Ndjambou made a complaint against Nguetsa and that Nguetsa was arrested and kept at the police station for two days. Kambiwa testified that she fears returning to Cameroon because she claims the government can "put you to death" if you refuse to enter into an arranged marriage.

In an oral decision, the Immigration Judge denied Kambiwa's application for asylum, withholding of removal, and withholding pursuant to CAT. The IJ considered Kambiwa's "demeanor while testifying," "the rationality, internal consistency, and the persuasiveness of the testimony," and the totality of the evidence, and found that Kambiwa did not provide credible testimony in support

3

of her applications. The IJ also held that even if Kambiwa's testimony was true, her application for asylum would not be granted because she did not demonstrate any nexus between the treatment she alleged and any protected category enumerated in the INA, 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). Though Kambiwa alleged in her application that she was a member of a particular social group, the IJ found that she failed to present evidence of her membership.[3] Additionally, the IJ found that Kambiwa failed to establish eligibility for relief under the CAT because she did not demonstrate that she would be tortured if returned to Cameroon. Finally, the IJ found that Kambiwa had knowingly made a frivolous claim for asylum and was therefore barred from relief. Kambiwa appealed.

On May 27, 2005, the BIA dismissed in part and sustained in part Kambiwa's appeal. The BIA specifically adopted the decision of the IJ denying asylum based on Kambiwa's lack of credibility, and dismissed this element of Kambiwa's appeal. The BIA, however, sustained Kambiwa's appeal of the IJ's decision that she had filed a frivolous asylum application.[4] Kambiwa filed a petition for review with this Court.

In response, DHS filed an unopposed motion to remand for further consideration of Kambiwa's claim that she feared persecution because of her membership in a particular social group. We granted the motion on February 7, 2006. On November 20, 2006, the BIA remanded to the IJ for further proceedings and entry of a new decision.[5] In its remand brief, the DHS conceded

---

[3] The IJ stated that Kambiwa "is simply a member of a family who is following the traditions of the Bamileke tribe in Cameroon."

[4] The BIA noted that Kambiwa did not speak English, was unfamiliar with immigration proceedings, and was *pro se* when she filed her asylum application and at her initial hearing.

[5] The BIA questioned the worth of a detailed adjudication of whether Kambiwa was a member of a particular social group, given that the adverse credibility finding "in and of itself" defeated her claims. Nonetheless, the BIA remanded proceedings to the IJ.

that Kambiwa was a member of a cognizable social group: Bamileke female tribe members who are opposed to arranged or forced marriages.

On remand, Kambiwa appeared at a hearing on May 17, 2007, before a different IJ. No additional evidence was submitted during the hearing. Instead, the IJ recognized the prior IJ's decision and reached the same conclusions regarding the denial of Kambiwa's applications for relief and protection from removal, with two exceptions: (1) it noted that the frivolous finding had been overturned by the BIA; and (2) it noted DHS's concession regarding Kambiwa's membership in a cognizable social group. Kambiwa appealed to the BIA, arguing that the second IJ's order holding that Kambiwa was a member of a particular social group necessitated a re-examination of the prior denial of her asylum application based on adverse credibility.

On December 29, 2008, the BIA dismissed her appeal. The BIA held that the DHS's concession did not alter the first IJ's adverse credibility determination, which was based on inconsistencies in Kambiwa's claim not related to her assertions of tribal membership or opposition to forced marriage. The BIA also noted that neither it nor the Fifth Circuit had disturbed the previous adverse credibility finding. This petition for review followed.

## II. DISCUSSION

As a threshold matter, we examine whether we have jurisdiction to review the BIA's order. DHS argues that Kambiwa failed to exhaust her administrative remedies regarding her withholding of removal and CAT protection claims. Our review of the record shows that Kambiwa mentioned her withholding of removal claim in her 2004 notice of appeal to the Board, but has not raised the issue in subsequent briefing.[6] Similarly, her 2007 briefs to the BIA address her membership in a social group related to her asylum application, but not her

---

[6] We note that while Kambiwa initially proceeded *pro se*, she was represented by counsel when her 2004 appeal brief was filed with the BIA.

withholding for removal claim.[7]  We do not presume to treat Kambiwa's asylum and withholding of removal claims separately.  *See Mikhael v. INS*, 115 F.3d 299, 306 (5th Cir. 1997) (holding that, though the claims are reviewed together, "a claim for asylum is a distinct remedy than a claim for withholding of deportation.").  Moreover, none of Kambiwa's notices of appeal or BIA briefs mention or argue her CAT claims.  Because Kambiwa failed to exhaust the withholding of removal and CAT claims with the BIA, we do not have jurisdiction to review the petition with respect to those claims. *See Wang v. Ashcroft*, 260 F.3d 448, 452-53 (5th Cir. 2001).

For Kambiwa's asylum claims, we review the BIA's decision and only consider the IJ's decision to the extent that it impacted the BIA's determination. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).  Questions of law are reviewed de novo.  *Nakimbugwe v. Gonzales*, 475 F.3d 281, 283 (5th Cir. 2007). We review factual findings for substantial evidence, which requires "only that the BIA's conclusion be based upon the evidence presented and be substantially reasonable." *Kane v. Holder*, 581 F.3d 231, 236 (5th Cir. 2009).  Our review of credibility findings is deferential.  *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). We may not reverse the BIA's factual findings unless the evidence compels a contrary conclusion. *Theodoros v. Gonzalez*, 490 F.3d 396, 400 (5th Cir. 2007) (citations omitted).  Since the BIA adopted the IJ's findings regarding Kambiwa's credibility, we review the IJ's findings here.

In order to be eligible for asylum, Kambiwa had to prove that she is unable or unwilling to return to Cameroon because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006); 8 U.S.C. § 1101(a)(42)(A). Even assuming eligibility, the

---

[7] Kambiwa's 2007 Notice of Appeal to the BIA refers to a general appeal of the IJ's credibility determination.

Attorney General retains discretion to grant or deny asylum. *Mikhael*, 115 F.3d at 303.

Here, our review of the record demonstrates that the IJ's findings are supported by substantial evidence. The IJ found that Kambiwa was evasive, that she gave very short answers, and that she seemed to have great difficulty in answering any question directly. For example, when asked when she first found out Ndjambou wanted to marry her, Kambiwa responded that this occurred when she reached the village. Kambiwa was then asked who told her, and she said that her uncles "reminded her." Kambiwa was then questioned how she already knew, to which she answered that she knew when she left the village. The IJ found that this testimony seemed "circular" and "made no sense," and did not answer questions specifically addressed to Kambiwa.

The IJ also cited numerous instances of inconsistencies in Kambiwa's testimony. For example, he noted that Kambiwa testified that on March 5, 2001, Ndjambou came to the house and asked her family to allow him to marry her. Kambiwa then stated that on June 20, 2001, her uncle took her to the village to meet Ndjambou, and that when she reached the village, she found out about the marriage. On June 20, her uncle reminded her that on March 5 Ndjambou had come to the house to ask to marry her. The IJ noted that Ndjambou could not explain why her uncle would have to state that Ndjambou had come to the house on March 5, but that Kambiwa specifically stated that her uncle mentioned that date. As another example, Kambiwa testified that her uncles threatened her father because he refused to send her to marry Ndjambou. Kambiwa further testified, however, that her father died in September 2000, yet the marriage to Ndjambou was not arranged until March 2001. Therefore, it would not be possible for her father to be threatened by her uncles. Moreover, when Kambiwa was asked whether she was watched during the period when she claimed she was kept in Ndjambou's house, she stated that she did not go there. In addition,

when asked how her father died, Kambiwa stated he was found dead in his room and had died of worry because he did not want her to marry an old man. The letter Kambiwa presented from her mother, however, stated that Kambiwa's father was killed by her uncles. At the close of the evidence, the IJ stated, "In consideration of the totality of the evidence and [Kambiwa's] testimony the Court is convinced that [Kambiwa] has not provided credible testimony in support of her application." We cannot say that the record compels a contrary conclusion.

Kambiwa asserts that some of the inconsistencies may be explained by problems with the translator in the removal hearing. There is no evidence in the record that testimony was misinterpreted, and therefore no basis to overturn the IJ's conclusions. *See Wang v. Holder*, 569 F.3d at 539 ("Given that the entire proceeding was tape recorded, we see nothing to indicate that [petitioner] could not have offered evidence of an improper translation in a motion for reconsideration based upon that tape if the translation was faulty.")

Kambiwa also argues that the second IJ's findings require review because the DHS conceded her credibility on remand. This argument is without merit. DHS specifically conceded that Kambiwa is a member of a protected group, but did not concede Kambiwa's credibility. Moreover, as the BIA noted, the credibility determination addressed inconsistencies in facts that are unrelated to Kambiwa's membership in the Bamileke tribe or to her opposition to arranged marriages. Nothing in the record supports reversal of the first IJ's credibility determinations.

## III. CONCLUSION

Because of the strong deference given to the IJ's credibility findings and the absence of evidence requiring a contrary conclusion, we conclude that Kambiwa has failed to show that she is entitled to asylum. Accordingly, we DENY the petition for review.