NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0419n.06

No. 12-3813

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 26, 2013*
DEBORAH S. HUNT, Clerk

FRANCISCO EDUARDO )
FERNANDEZ DIAZ, )
                                              )
          **Petitioner,**                     )       ON PETITION FOR REVIEW
                                              )       OF A FINAL ORDER OF
v.                                            )       THE BOARD OF
                                              )       IMMIGRATION APPEALS
ERIC H. HOLDER, JR., United States            )
Attorney General,                             )
                                              )       **O P I N I O N**
          **Respondent.**                     )
_____       )

Before:  **DAUGHTREY, MOORE, and STRANCH, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**   Francisco Eduardo Fernandez Diaz

("Fernandez Diaz") sought to avoid removal by adjusting his immigration status.  Alternatively, he

sought voluntary departure.  The Board of Immigration Appeals ("BIA") affirmed the immigration

judge's ("IJ") finding that Fernandez Diaz's status could not be adjusted because he had falsely

represented himself as a U.S. citizen.  The BIA also affirmed the IJ's discretionary denial of

Fernandez Diaz's request for voluntary departure.  We **DENY** the petition for review of the BIA's

order insofar as it challenges the determination that Fernandez Diaz is inadmissible and ineligible

to adjust his status, and **DISMISS** the petition to review the denial of voluntary departure because

we lack jurisdiction.

## I. FACTS AND PROCEDURE

Fernandez Diaz entered the United States from Mexico on May 12, 1999, as a non-immigrant visitor. He and his family promptly moved to Michigan, where he has lived since. The central issue of Fernandez Diaz's petition for review concerns his decision in 2002 to purchase the social security card and Puerto Rican birth certificate of Daniel Gonzalez Marrero ("Gonzalez"), an American citizen.[1] Fernandez Diaz used Gonzalez's documents to obtain an identification card from the State of Michigan. Administrative Record ("A.R.") at 95 (IJ Op. at 14). Fernandez Diaz then applied for a job at Summit Polymers, Inc. ("Summit Polymers") under Gonzalez's name, using the Michigan ID card and social security card as proofs of identity. He also submitted an Employment Eligibility Verification Form I-9 ("Form I-9") and a job application; Fernandez Diaz claims that, although he was present during the process, his ex-girlfriend completed the forms and signed his name. *Id.* at 94 (IJ Op. at 13). Fernandez Diaz (or his ex-girlfriend) checked a box on his Form I-9 that stated "I attest, under penalty of perjury, that I am . . . [a] citizen or national of the United States." A.R. at 530 (Form I-9). He also checked "yes" to the following question on Summit Polymers's job application form: "Are you a citizen of the United States?" A.R. at 366 (Job Application at 1).

On May 29, 2002, Fernandez Diaz applied to adjust his immigration status. The application was denied because he had falsely claimed to be a citizen in order to obtain work, and because he

---

[1]The BIA and Fernandez Diaz both occasionally, and incorrectly, identify Gonzalez by the name "Hernandez." *See* A.R. at 4–5 (BIA Op. at 2–3); Pet'r's Br. at 15–16.

had been convicted of larceny under the false name.[2] A.R. at 521–22 (Decision on Application for Status as Permanent Resident at 2–3). Thereafter, U.S. Citizenship and Immigration Services ("USCIS") initiated removal proceedings, during which Fernandez Diaz conceded removability. A.R. at 82 (IJ Op. at 1). He filed another petition to adjust his status; relatedly, he sought to have any finding of inadmissibility waived. At the conclusion of a merits hearing before the IJ, Fernandez Diaz further sought voluntary departure to Mexico in the event that he could not have his status adjusted. The IJ determined that Fernandez Diaz was ineligible for a status adjustment because he falsely claimed to be a citizen in violation of 8 U.S.C. § 1182(a)(6)(C)(ii)(I) when he used Gonzalez's documents to apply for a job and obtain a Michigan ID card. *Id.* at 101–02 (IJ Op. at 20–21). The IJ declined to exercise its discretion to grant Fernandez Diaz's request for voluntary departure. *Id.* at 106 (IJ Op. at 25).

Fernandez Diaz appealed the IJ's decision to the BIA. With respect to the adjustment-of-status claim, he argued that there was insufficient evidence to establish that he had falsely represented himself as a U.S. citizen for the following reasons: his ex-girlfriend completed his job-application forms for him, his Form I-9 was ambiguous as to whether he was claiming to be a citizen or a national, and his making a false claim in order to obtain employment did not violate § 1182(a)(6)(C)(ii)(I). A.R. at 4 (BIA Op. at 2). The BIA concluded that Fernandez Diaz bore the burden of establishing his admissibility, and that his presenting Gonzalez's documents in applying

---

[2]Fernandez Diaz pleaded guilty to larceny under Gonzalez's name. On separate occasions he pleaded guilty under his own name to operating a vehicle while intoxicated, driving on a suspended license, and disorderly conduct. A.R. at 90–92 (IJ Op. at 9–11).

for a Michigan ID card "constitute[d] a false claim to United States citizenship for a benefit under state law." *Id.* at 4–5 (BIA Op. at 2–3). Accordingly, the BIA concluded that Fernandez Diaz was inadmissible. With respect to the request for voluntary departure, the BIA identified several factors—Fernandez Diaz's use of Gonzalez's documents to obtain a Michigan ID card, to get a job at Summit Polymers, and to avoid a conviction under his own name; Fernandez Diaz's past convictions; his longtime presence in the United States; his family ties; and his employment history—and ultimately concluded that "the respondent's serious criminal history and engagement in document fraud and the use of another's identity outweigh the positive equities presented in this case." *Id.* at 5 (BIA Op. at 3). Fernandez Diaz timely petitioned for review.

## II. ADJUSTMENT OF STATUS

We review the BIA's legal determinations de novo, though we defer to its "'reasonable interpretations of the INA.'" *Parlak v. Holder*, 578 F.3d 457, 462 (6th Cir. 2009) (quoting *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005)), *cert. denied*, — U.S. — , 130 S. Ct. 3445 (2010). "We review factual findings under a substantial evidence standard," according to which reversal is appropriate only when "'any reasonable adjudicator would be compelled to conclude the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

To adjust his status, an alien must establish his admissibility to the United States. 8 U.S.C. § 1255(a). "Because an alien seeking to adjust his status is in a position similar to that of an alien seeking entry into the United States, the alien bears the burden of establishing that he is 'clearly and beyond [a] doubt entitled to be admitted and is not inadmissible.'" *Ferrans v. Holder*, 612 F.3d 528,

531 (6th Cir. 2010) (quoting *Matovski v. Gonzales*, 492 F.3d 722, 738 (6th Cir. 2007)). Central to

this appeal is 8 U.S.C. § 1182(a)(6)(C)(ii)(I), which states as follows:

> Any alien who falsely represents, or has falsely represented, himself or herself
> to be a citizen of the United States for any purpose or benefit under this chapter
> (including [§] 1324a of this title) or any other Federal or State law is inadmissible.

Although a finding of inadmissibility may be waived in certain instances because of extreme

hardship, no waiver provision applies to an alien who falsely represents himself as a citizen. *See*

§ 1182(a)(6)(C)(iii) (extending § 1182(i)'s waiver provisions for a finding of extreme hardship to

§ 1182(a)(6)(C)(i), but not to § 1182(a)(6)(C)(ii)).

Fernandez Diaz contests two elements of § 1182(a)(6)(C)(ii)(I) as it applies to him. First,

he argues that the government failed to prove that he made a knowing misrepresentation. He claims

that, although the government proved that he knowingly presented Gonzalez's documents, it failed

to prove that in doing so he intended to represent himself as a citizen and not merely as a national.[3]

However, the burden of proof is on Fernandez Diaz to demonstrate that he is admissible; he was

responsible for demonstrating that he had not falsely represented himself. In light of his application

to Summit Polymers, substantial evidence does not compel the conclusion that Fernandez Diaz did

not represent himself as a citizen. Fernandez Diaz submitted his Form I-9 attesting that he was "a

citizen or national of the United States." A.R. at 530 (Form I-9); *cf. Crocock v. Holder*, 670 F.3d

400, 403 (2d Cir. 2012) (declining to reverse the BIA's conclusion that a petitioner violated

§ 1182(a)(6)(C)(ii)(I) when he checked the same box on Form I-9). In addition, Fernandez Diaz

---

[3]The parties agree that § 1182(a)(6)(C)(ii)(I) would not apply to an alien who knowingly misrepresented himself as a U.S. national.

provided an affirmative response to the question "Are you a citizen of the United States?" on his job application. A.R. at 366 (Job Application at 1). Thus, the record does not compel the conclusion that Fernandez Diaz proved "'clearly and beyond [a] doubt'" that he did not knowingly represent himself as a citizen when he used Gonzalez's documents. *See Ferrans*, 612 F.3d at 531 (quoting *Matovski*, 492 F.3d at 738).

Second, Fernandez Diaz argues that the government failed to prove that he falsely represented himself as a citizen for "any purpose or benefit" that is prohibited by § 1182(a)(6)(C)(ii)(I). Again, the burden to establish his entitlement to adjustment of status (after conceding removability) rested on Fernandez Diaz, not the government. Regardless, Fernandez Diaz misrepresented his identity primarily in three settings: to obtain a Michigan ID card, to avoid arrest under his own name, and to apply for a job with Summit Polymers. With respect to private employment, we have already interpreted the expression "purpose or benefit" in the context of § 1227(a)(3)(D)(i), a near-identical statute to § 1182(a)(6)(C)(ii)(I),[4] to include an application for private employment:

> We now join all of our sister circuits who have considered the issue and hold that a false representation of citizenship by an alien for the purpose of obtaining private employment is a "purpose or benefit" under the Act, done, at the very least, for the "purpose" of evading § 1324a's provisions.

---

[4]Section 1227(a)(3)(D)(i) states as follows: "Any alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under this chapter (including [§] 1324a of this title) or any Federal or State law is deportable." The only difference between § 1182(a)(6)(C)(ii)(I) and § 1227(a)(3)(D)(i) is that an alien who violates the former becomes *inadmissible*, while an alien who violates the latter becomes *deportable*.

*Ferrans*, 612 F.3d at 533; *accord Rodriguez v. Mukasey*, 519 F.3d 773, 777 (8th Cir. 2008) (interpreting § 1182(a)(6)(C)(ii)(I)); *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007) (same); *Theodros v. Gonzales*, 490 F.3d 396, 402 (5th Cir. 2007) (interpreting § 1227(a)(3)(D)(i)). This interpretation of "purpose or benefit" accords with the function of § 1324a, which establishes an "employment verification system" that employers must follow in order to verify that their employees are authorized to work under federal immigration laws. § 1324a(b); *cf. Castro v. Att'y Gen.*, 671 F.3d 356, 369 (3d Cir. 2012) ("There is no question that § 1182(a)(6)(C)(ii) encompasses false claims of U.S. citizenship made during the employment eligibility verification process."). Indeed, the Form I-9 that Fernandez Diaz filled out states that § 1324a provides the government with authority to collect information about job applicants. *See also* Form I-9 at 6, *available at* http://www.uscis.gov/files/form/i-9.pdf.[5] In light of § 1324a's function and our settled interpretation of "purpose or benefit" in the context of § 1227(a)(3)(D)(i), we conclude that an alien who falsely represents his citizenship in order to obtain private employment does so for the purpose of evading § 1324a's provisions, in violation of § 1182(a)(6)(C)(ii)(I).

Fernandez Diaz does not dispute that he applied to Summit Polymers using Gonzalez's documents and identity. Thus, Fernandez Diaz falsely represented his citizenship for the purpose of evading § 1324a. Because substantial evidence does not compel the conclusion that he did not

---

[5]USCIS revised Form I-9 on March 8, 2013. Introduction of the Revised Employment Eligibility Verification Form, 78 Fed. Reg. 15030 (Mar. 8, 2013). The current Form I-9 removes the disjunctive language at issue in this case; an applicant now identifies without ambiguity whether he is a citizen, noncitizen national, lawful permanent resident, or alien authorized to work for a period of time. Form I-9 at 7, *available at* http://www.uscis.gov/files/form/i-9.pdf.

knowingly represent himself as a citizen, the challenge to the BIA's conclusion that Fernandez Diaz violated § 1182(a)(6)(C)(ii)(I) fails. Fernandez Diaz is thus inadmissible, and so is ineligible for an adjustment of his status.

## III. VOLUNTARY DEPARTURE

Fernandez Diaz also sought voluntary departure in lieu of removal. The BIA identified several positive considerations that weighed in favor of exercising discretion to grant voluntary departure, including Fernandez Diaz's long tenure in the United States, his family presence here, and his steady employment record. A.R. at 5 (BIA Op. at 3). Nevertheless, the BIA concluded that "the respondent's serious criminal history and engagement in document fraud and the use of another's identity outweigh the positive equities presented in this case." *Id.* Accordingly, it affirmed "the Immigration Judge's ultimate determination that the respondent does not merit voluntary departure in the exercise of discretion." *Id.*

We usually lack jurisdiction to review the discretionary denial of voluntary departure. 8 U.S.C. § 1252(a)(2)(B). Fernandez Diaz tries to avail himself of an exception to this rule, one reserved for "constitutional claims or questions of law," § 1252(a)(2)(D), by arguing that the BIA failed to follow its prior opinion in *Matter of Arguelles*, 22 I. & N. Dec. 811 (BIA 1999), which we have jurisdiction to review. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (explaining that the "the choice by the BIA to disregard its own binding precedent" constitutes a non-discretionary decision for which jurisdiction to review exists).

In *Arguelles*, the BIA stated that "many factors may be weighed in exercising discretion with voluntary departure applications." 22 I. & N. Dec. at 817. Such factors include "violations of the

immigration laws," "the existence . . . of any criminal record," "long residence here," and "close family ties in the United States." *Id.* The BIA identified these factors when assessing whether Fernandez Diaz merited voluntary departure. A.R. at 5 (BIA Op. at 3). Meanwhile, the BIA expressly recognized that *Arguelles* required it to weigh positive factors against negative factors in deciding whether to grant voluntary departure. *Id.*; *cf. Ettienne v. Holder*, 659 F.3d 513, 518–19 (6th Cir. 2011) (dismissing for lack of jurisdiction a petition to review a discretionary denial of cancellation of removal because the IJ did not misunderstand or misconstrue the applicable standard). The BIA then concluded that, because his negative factors outweighed his positive ones, Fernandez Diaz did not merit a discretionary grant of voluntary departure. Given this weighing of factors, the BIA did not disregard its own precedent. Accordingly, we lack jurisdiction to review the BIA's discretionary denial of voluntary departure.

## IV. CONCLUSION

For the reasons above, we **DENY** Fernandez Diaz's petition insofar as it challenges the determination that he is inadmissible, and **DISMISS** for lack of jurisdiction the petition to review the denial of voluntary departure.